Argued October 15; modified October 18; rehearing denied
November 20, 1934

# RAMSEY *v.* HOWARD

(36 P. (2d) 602)

*George H. Brewster,* of Redmond, for appellant.

*Bernard H. Ramsey,* of Madras, in pro. per. (N. G. Wallace, of Bend, on the brief), for respondent.

KELLY, J.   At the primary election held on the 18th day of May, 1934, the parties hereto were candidates opposing each other for the Democratic nomination for the office of district attorney for Jefferson county.

Contestee urges that the circuit court erred in finding that contestee was guilty of intimidating voters, soliciting a vote on election day, of paying for loss or damage due to attendance at the polls or in registering; and also in finding that contestant was not guilty of having colonized voters.

Contestee concedes that an appeal such as this, that is, an appeal from a judgment of the trial court in an election contest, is not to be tried de novo, and that the trial court's findings upon the evidence are conclusive upon the appellate court.  It is argued that the trial court erred in its deductions from the facts and that its conclusions of law are erroneous.

Edward Metcalf, an Indian, testified that he was working in an Indian Emergency Conservation camp known as HeHe in Wasco county, Oregon; that his

family was with him at said camp; that on the 16th day of April, 1934, he had registered as a Democratic voter in Jefferson county; that about twenty days before the primary election contestee came to the camp introduced himself to Metcalf, told Metcalf that contestee was the district attorney; that since Metcalf had his family there in camp, it would be the same as living in a different county; that Metcalf would not have a right to vote in Jefferson county, and that if Metcalf voted there his vote would be liable to challenge.

Metcalf further testified:

"Q. Is that all he said about challenge?

"A. Yes.—Well, no, he said if you voted down in a different county you might be liable to perjury for voting in a different county from where you were. I did not know.

"Q. Did you cast a vote at the primary election on May 18, 1934?

"A. No, I did not.

"Q. Prior to this conversation with Mr. Howard, did you intend to cast your vote?

"A. Yes.

"Q. What effect, if anything, did Mr. Howard's conversation have upon you with reference to your voting?

"A. It gave me the impression that I was not entitled to vote since I lived in a different county, so I did not think it was worth while to try to vote under those conditions."

Dowd Franklin, another Indian, testified that he was registered as a Democratic voter in Jefferson county; that he knew that contestee was the district attorney; that between the time of registering and the date of the primary election, he, Franklin, was working at said HeHe camp; and that contestee came to said

camp after Franklin had registered and had a talk with him. When asked to relate the substance of the conversation, he said:

"A couple of boys were up there when Howard (contestee) came up to talk to me, and he spoke to me about voting. I told him I was a registered voter and I would not mind voting. And he came up there and stated that he would question the vote, or it could be thrown out at the polls—whatever the heck of it was."

Upon being again asked to tell exactly what Mr. Howard said, or, as nearly as he could remember, the substance of it, Franklin testified:

"Well, the substance of it was that he could either cancel the vote or throw it out, whatever the heck of it it is. That is all I understood of it. That is all I cared to understand about it."

Franklin also testified that he did not vote at the election. When asked why he did not vote, he said:

"Well, for the simple reason that I thought it was no use voting."

When asked why he thought there was no use in voting, he said:

"Well it had me in a way so it would be almost a waste of time, and even could get in trouble about voting. Rather than go 26 miles for nothing, I thought, well, we will just leave it go."

Herbert Wabno, another Indian, testified that he was a registered Democratic voter in Jefferson county; that he was group foreman at the old Mill camp on the Warm Springs reservation where he was employed from July 8, 1933; that after Wabno had registered, contestee came to said camp and told Wabno that he could not vote, because he was in the wrong county; that because Wabno slept in Wasco county, that county

was the place of his residence. Wabno also testified that he voted at said primary election.

Wabno also testified that contestee told him that contestee was the district attorney; but that did not mean anything to him.

■ The contestee testified that he said nothing about perjury to Franklin and that, after being advised that Franklin, Metcalf and Wabno had resided in Jefferson county, he told them that he would not challenge their votes. As stated, however, it is conceded that we are bound by the finding of the trial court upon the facts; and, hence, we are constrained to hold that where the prosecuting officer of a county is a candidate for renomination at a primary election, and solely in the interest of his candidacy for renomination such officer advises two registered voters of the party to which the officer and the voters belong that they have no right to vote where they are registered, and suggests to one of them that a charge of perjury may result if he should vote, such officer thereby makes use of undue influence in order to induce the voters thus treated to refrain from voting the ticket of their political party contrary to the letter and spirit of section 36-2427, Oregon Code 1930.

Contestee cites the case of *United States v. Guion,* 37 Fed. 263, to the point that the trial court erred in so holding. In that case, the defendant had been indicted for intimidation of a voter named Butler. The testimony tended to show that the accused was at the polls for the purpose of scrutinizing the vote cast, and that he believed that Butler was not a qualified voter and that he challenged the vote solely in consequence of such belief. It differs from the case at bar in that the accused was not a prosecuting officer, the chal-

lenge was made at the proper time and place, and no threat of a charge of perjury accompanied it.

■ Ben Bellamy, Jr., testified that he was a resident of Meadows; that on primary election day, he was at Warm Springs, working for the I. E. C. W.; that about 10 a. m. of that day at Warm Springs, contestee and Bellamy had a conversation in which contestee said in effect that he would bring to Bellamy a transfer card, which would enable him to vote at Warm Springs. The testimony of Bellamy also is to the effect that contestee said that Bellamy's father was strongly opposed to contestee and that contestee was wondering if Bellamy, Jr., was also opposed to contestee. Young Bellamy also testified that his father's attitude did not influence him in his voting.

Bellamy further testified that at about 5 p. m. on primary election day, at the agency camp, contestee met him and told him that he had brought the card and left it at the polls, and that contestee then said:

"The boys over there, over at Madras, got an idea that they got a pretty good joke on me; they think after I went to all the trouble of getting this card for you, making this trip over, that you would not vote for me; * * * You would not play a dirty trick on me like that, or, I don't think you would play a dirty trick on me like that."

We quote from Bellamy's testimony:

"Now, prior to the time you saw Mr. Howard out there, Ben, whom did you intend to vote for district attorney, on democratic ticket, if you voted at all?

"A. Mr. Ramsey.

"Q. After the conversation that you had and the things that Mr. Howard did, did you change your mind about it?

"A. I did, yes, sir."

The statute prescribes:

"It shall be unlawful for any person at any place on the day of any election to ask, solicit, or in any manner try to induce or persuade any voter on such election day to vote for or refrain from voting for any candidate," etc. Section 36-2433, Oregon Code 1930.

The course taken by contestee on the day of the primary election as thus portrayed by the above named witness, Ben Bellamy, Jr., clearly supports the conclusion of the trial court that contestee was guilty of soliciting a vote on election day.

Contestee argues that because Bellamy, Jr., was not entitled to vote at Warm Springs precinct for county officers, he was not a legal voter and that soliciting him was not soliciting a voter.

The record discloses that Bellamy, Jr., was a legal voter of Jefferson county, entitled to vote at the election in question. It is immaterial where in the county he might have cast his vote, or whether he did vote or not. The question is whether on election day contestee solicited his vote.

■ It is also suggested by contestee that there was no solicitation in different election precincts; that it was not general, or common, or pursuant, to a general plan or scheme, and that it did not affect the result of the election. These elements are not essential in support of a charge that the statute in question (section 36-2433, supra) has been violated.

■ Among other things, section 36-2437, Oregon Code 1930, provides that—

"Upon the trial of any action or proceeding under the provisions of this act for the contest of the right of any person declared nominated or elected to any office, or to annul or set aside such nomination or election * * * it appears from the evidence * * *

that the offense or offenses complained of were trivial, unimportant, and limited in character, and that in all other respects his participation in the election was free from such offenses or illegal acts, or that any act or omission of the candidate arose from inadvertence or from accidental miscalculation, or from some other reasonable cause of a like nature and in any case did not arise from any want of good faith, and under the circumstances it seems to the court to be unjust that the said candidate shall forfeit his nomination   *   *   * then the nomination   *   *   *   of such candidate shall not by reason of such offense or omission complained of be void.'' etc.

We are unwilling to hold that the three offenses, which we have discussed, were trivial or unimportant. Because contestee is an attorney at law and the incumbent in the office of district attorney, there is less excuse for him to disregard the plain mandates of the statute than for those of the laity who have had no occasion to inform themselves, particularly, with regard to such mandates.

We are not unmindful of the state of the campaign for the nomination which the parties hereto were seeking. Contestee had been advised that in Warm Springs precinct in Jefferson county, a number of Indians were employed in the I. E. C. camp. He was also aware that contestant's brother resided in that precinct. Contestee testified that on or about the 19th or 20th of April, in Cashman's store at Madras, contestant said to contestee:

''I have been watching you, Doc, and for every democrat you steal from the republican party I made a mark, and I got several marks. Then I went over to an Indian and I got an Indian for every republican that you got and put in the democratic party.''

The registration of Democratic voters in Warm Springs precinct increased from eleven voters regis-

tered up to April 13 to forty-six on April 16. Then contestee made a copy of the registrations showing the original eleven, also the additional number making forty-six, and prepared to investigate the qualifications of the voters.

We quote the contestee's testimony:

"Q. Well, you say you prepared to investigate, what did you do about the investigation?

"A. I think I made a trip over to Warm Springs.

"Q. Did you go to old Mill camp?

"A. I think first I went to the agency, made some inquiry.

"The Court: Let me ask Mr. Howard whether you were making that investigation in your official capacity of district attorney or as a candidate for office?

"A. I think both, your honor.

"The Court: Doesn't it occur to you that you cannot very well occupy a dual capacity in that way, as a protagonist on the one hand and district attorney on the other?

"A. Yes, but I don't just remember—when I went there I don't think I went just as district attorney. I think, very likely, in my own interest.

"The Court: Well, you know there is no need of guessing at it.

"A. Well, I would say that I went over there in my own interest.

"Mr. Brewster: Q. What was the purpose of the trip that you have just testified to when you saw Ted Metcalf, Dowd Franklin and Herb Wabno?

"A. I went there on a trip of investigation. That was my—purpose on that trip.

"Q. You testified that you asked the boy—Metcalf about his residence, how long he had resided—what was the purpose of those questions, why did you ask those?

"A. To determine whether or not he had a right to vote.

"Q. Was that true as to Wabno?
"A. Yes, sir.
"Q. Was that true as to Dowd Franklin?
"A. Yes sir."

■ The record discloses that contestee sent to one Lawrence Evick, who was temporarily away from home, a blank application for an absentee's voter's ballot together with contestee's check for one dollar. Evick was a registered Democratic voter in Madras precinct, Jefferson county. Contestee testified that he sent the application to Evick at the request of the latter's mother; that Evick was a cripple; that contestee sent him the dollar because Evick was financially unable to bear the expense involved; and that, as to the money, the transaction was simply a loan. The record discloses that the dollar was returned to the contestee.

Contestant claims that this was a violation of section 36-2431, Oregon Code 1930, which, among other things, provides:

"It shall be unlawful for any person to pay another for any loss or damage due to attendance at the polls, or in registering, or for the expense of transportation to or from the polls. No person shall pay for personal service to be performed on the day of a caucus, primary, convention, or any election, for any purpose connected therewith, tending in any way, directly or indirectly, to affect the result thereof, except for the hiring of persons whose sole duty is to act as challengers and watch the count of official ballots," etc.

We think that no violation of the foregoing section of the statute is shown by the course taken by contestee in his transaction with Evick. Evick sustained no loss or damage due to attendance at the polls or in registering; and contestee paid Evick no such loss or damage. There is nothing in the record to indicate that Evick

incurred any expense for transportation to or from the polls, nor that the dollar in question was sent to him in payment therefor. Neither does it appear that Evick performed any service whatever on primary election day nor that the dollar sent him by contestee was to pay him for any such service. The expense necessary to be incurred in making application for an absentee voter's ballot is not within the purview of said section 36-2431, supra. The course taken by contestee with reference to Evick's application for an absentee voter's ballot does not meet our sanction or approval. We deem it a violation of the spirit of the corrupt practice act; but we cannot concur with the conclusion of the trial court that it constituted a violation of the letter of said section 36-2431, supra.

■ The charge made by contestee against the contestant to the effect that contestant colonized voters rests upon the fact that contestant visited Warm Spring precinct and in the tent of his brother filled the blanks on a number of registry cards for the use of the registrants in registering as Democratic voters. As to these registry cards, contestant acted merely in the capacity of scrivener. It also appears that on Sunday, April 16, 1934, contestant transported four electors in his car from White Water camp to the Warm Springs agency to register, and that he returned to White Water camp with the four electors and also with Dowd Franklin.

This does not constitute an offense against the election laws. It is insufficient to sustain the charge of colonizing transient voters which contestee makes in his further and separate answer. The trial court committed no error in finding that the alleged violation of

the corrupt practices act by contestant had not been proved.

The judgment of the circuit court is modified by substituting for finding number eight of the trial court, a finding of this court to the effect that the transmittal to Lawrence Evick by contestee of a blank application for an absentee ballot and the enclosure with such transmittal of a check for $1 to defray the notarial fee required in making such application did not constitute a violation of section 36-2431, Oregon Code 1930.

As thus modified, the judgment of the circuit court is affirmed.

BELT, J., not sitting.