Argued September 5, reversed with instructions
September 25, 1968

# COOK, *Appellant and cross-respondent, v.* CORBETT, *Respondent and cross-appellant.*

446 P. 2d 179

*Leo Levenson,* Portland, argued the cause and filed briefs for appellant and cross-respondent.

*Herbert M. Schwab,* Portland, argued the cause for respondent and cross-appellant. With him on the brief were Rives & Schwab, and Gerard K. Drummond, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

This is an election contest over the Democratic nomination for Senator for the Twelfth Senatorial District (Multnomah county), Position No. 4. Alice Corbett and Vernon Cook were the only two candidates for the nomination in the primary election held on May 28, 1968. Corbett received the highest number of votes and was declared the nominee.

Cook brought this contest pursuant to ORS 251.015 to ORS 251.090, on the ground that Corbett had during her campaign made false statements in violation of the Corrupt Practices Act, ORS 260.010 to ORS

260.540. The circuit court found that Corbett had made false statements, but that the statements' were not deliberate or material, and dismissed the proceeding. Cook appeals.

The evidence consists of an agreed statement of facts and numerous exhibits. It appears therefrom that in 1964 Cook was elected at large to the Senate from Multnomah county, for a four-year term expiring in January, 1969. In 1965 the legislature provided by law (Oregon Laws 1965 ch 578) that legislative candidates from Multnomah county should run by position number, and pursuant thereto Cook was assigned Position No. 4. At the primary election in May, 1968, he was running for the Democratic nomination for Position No. 4, of which he was the incumbent.

Alice Corbett served two consecutive four-year terms as Senator from Multnomah county. Her second term expired in January, 1967, and during that term she was assigned Position No. 8. It will be noted that when Corbett was running for the Democratic nomination in May, 1968, she was not an incumbent Senator.

From the agreed statement of facts and the exhibits it appears that during her campaign Corbett published the following statements:

(a) She submitted to the Director of Elections a campaign slogan which was printed on sample ballots distributed to voters and on every official ballot, and in the newspapers, reading as follows:

"Re-elect Democratic Senator working for you. Economy, more jobs, lower property taxes."

(b) She submitted to the Director of Elections material which was inserted in the Voters' Pamphlet,

published and distributed to the voters by the state, reading as follows:

**Democrat**                    **ALICE CORBETT**

For State Senator, Twelfth District
Multnomah County, Position No. 4

[Photo omitted]

RE-ELECT SENATOR CORBETT because . . .

SENATOR ALICE CORBETT can get . . .

NEW INDUSTRY in Oregon.

MORE JOBS and improved business conditions.

A FAIR TAX program, based on thrift and economy.

A more equitable distribution of school funds.

ADEQUATE old-age ASSISTANCE FOR SENIOR CITIZENS.

Progressive and FAIR LABOR LEGISLATION.

SENATOR ALICE CORBETT WILL continue to OPPOSE . . .
The sales tax and any INCREASE in property TAXES.
Any legislation designed to keep prices high.

RE-ELECT SENATOR CORBETT because . . .
As your Senator (1959-1967) and Democratic National Committeewoman for eight years (1960-1968) she has earned the respect and admiration of such labor leaders as Phil Brady and Bill Way, and political leaders as House Speaker, Pat Dooley, and President of the Senate, Walter J. Pearson.

Join us in re-electing SENATOR ALICE CORBETT.

RE-ELECT SENATOR CORBETT COMMITTEE
Ward Cook, Chairman, 4175 S.W. Humphrey Blvd.

(This information furnished by Re-elect Senator Corbett Committee)

(c) She distributed placards reading:

"Re-elect Democratic Senator
CORBETT"

(d) She published advertisements in newspapers of broad circulation in Multnomah county which implied that she was the incumbent Senator of Position No. 4. One of the widely used advertisements read in part as follows:

"Make Your Vote Count Tuesday!
Re-elect
CORBETT
State Senator - - - Position #4"

Another widely used newspaper advertisement is reproduced below:

(e) She broadcast 39 television announcements reading as follows:

"Re-elect CORBETT
STATE SENATOR
POSITION NO. 4, DEMOCRAT
Paid by Re-elect Alice Corbett Committee"

which were accompanied by the following audio statement:

"Vote to Return Corbett to the Senate . . .

Eight years Legislative Experience . . .
Hard working . . . Alert to your Problems
. . . Get Things Done
Re-elect Corbett . . . Position 4"

The trial court found that the statements made in the ballot slogan, the Voters' Pamphlet, those newspaper advertisements of the kind shown above, and the television announcements, were false and misleading. He found that the placards were misleading, but made no finding of falsity.

This proceeding was brought under ORS 251.025, which authorizes a contest for "deliberate and material violation of any provision of the election laws." Corbett is charged with making false statements in her advertising in violation of ORS 260.380, a part of the Corrupt Practices Act. In order for Cook to prevail, therefore, he must prove three elements: (1) that Corbett made false statements, (2) that she made them deliberately, and (3) that the statements were material.

■ The findings of the trial court on questions of fact are normally binding on us. However, in a case in which the facts are admitted, the inferences to be drawn therefrom are questions of law, and we are not bound by the findings of the trial court. *Gonia v. E. I. Hagen Co.*, 251 Or 1, 443 P2d 634, 637 (1968), and cases there cited.

■ We agree with the trial court's finding that the campaign statements made by Corbett as described above were false. Setting aside the placards, the other statements quoted clearly implied and obviously were intended to create the belief in the reader that Corbett was the incumbent Senator holding Position No. 4 to which she was seeking re-election. The trial court's finding of falsity is not weakened because some of the

advertisements, including the Voters' Pamphlet material, on a complete reading disclosed that Corbett's term as a Senator had expired in 1967. The intent to create the belief that Corbett was the incumbent is clearly apparent even in those ads.

We disagree with the trial court's finding that the false statements were not made deliberately. The statement of facts and the exhibits show beyond any doubt that the false statements were made as an integral part of a well organized campaign, planned with considerable expertise, and, at least in part, with professional assistance. Corbett was not a neophyte in politics. During her two terms in the Senate she had been continuously a member of its Committee on Elections and in 1959-60 was chairman of that committee. Corbett knew that the statements were being published and why the precise language was being used. She does not contend to the contrary.

■ Corbett's deliberate intention in publishing some of the statements is established by the following circumstance. The district attorney for Marion county on April 11, 1968, wrote Corbett a letter advising her that he was charged with enforcing the election laws and questioning the propriety of her use of the word "re-elect" and the title "Senator" in her Voters' Pamphlet and other campaign material. He said in part:

> "My suggestion would be that you take immediate steps to correct your campaign material, as well as the voter's pamphlet, and eliminate therefrom both the words "reelect" and the title "Senator" from both your name and your committee."

Acting through counsel, Corbett replied on April 22, and maintained that the wording used in her advertising was proper, but proposed to change her state-

ment in the Voters' Pamphlet to read "REELECT ALICE CORBETT SENATOR." It proved to be too late to change the statement in the Voters' Pamphlet, but during the remaining month before the primary election Corbett continued to use in her newspaper and television advertising the statements found to be false by the trial court. In our view, the proof that the statements were made deliberately is incontrovertible.

We turn next to the third element of the charge, materiality. Corbett argues in this court simply that conduct is not material unless it changes the result of the election. Cook did not allege or offer to prove that Corbett's false statements changed the result.

The meaning of "material" as used in ORS 251.025 becomes clear when it is viewed in the light of the other relevant statutory provisions. Our Corrupt Practices Act was patterned after an earlier English act,[1] and was initiated and enacted by a vote of the people in 1909 (Oregon Laws 1909 ch 3). Our act contained three sections which are controlling here. Section 45 is now ORS 251.025, referred to above, and listed the grounds for an election contest. The first ground was "deliberate, serious and material violation of any of the provisions of this act." The word "serious" was eliminated in 1957 when the statutes providing for election contests were consolidated. This change is not significant here.

Section 39, now ORS 260.440, provided in substance that if upon the trial of an election contest it appeared that any person was guilty of any corrupt practice he should be punished "by being deprived of the nomination or office." The critical sentence read as fol-

---

[1] Corrupt and Illegal Practices Prevention Act, 1883, 46 & 47 Vict. c. 51; amend. The Corrupt and Illegal Practices Prevention Act, 1885, 58 & 59 Vict. c. 40.

lows: "The only exception to this judgment shall be that provided in section 38 of this act."

Section 38 provided for an exception if the "offense or offenses complained of were trivial, unimportant and limited in character." It is thus obvious that "material" was used in section 45 in the sense of "substantial" as compared to "trivial" and "unimportant" as used in section 38.

■ Section 38 is now ORS 260.430, and the words "trivial, unimportant and limited in character" remained in that section until a general revision of the election laws in 1957, when those words were eliminated. The apparent purpose of eliminating them was to further restrict the discretion granted the judiciary by section 38 to mitigate the punishment made mandatory by section 39. The 1955 Legislative Interim Committee on Elections expressed the thought in its report[8] that "the law should not authorize a court to waive prosecution in certain circumstances for 'trivial' or 'unimportant' offense (ORS 260.430)." The interim committee recommended[9] as follows:

> "c. Repeal is urged for the provision (ORS 260.430) that authorizes the court hearing any corrupt-practice case which may result in removing an official from office to waive minor violations."

It thus appears that even if we were inclined to the view that Corbett's conduct was trivial and unimportant, the legislature has attempted to preclude us from mitigating the consequences as prescribed in ORS

---

[8] Report of the Legislative Interim Committee on Elections, submitted to the Forty-ninth Legislative Assembly in accordance with Senate Joint Resolution No. 9, Oregon Laws 1955 (November 1956), p. 45.

[9] Id. at 49.

260.440. However, we are convinced that Corbett's violation was neither trivial nor unimportant, but substantial. We need not speculate on how much advantage, if any, accrues to an incumbent in an election contest from the fact of his incumbency. We know that most, if not all, incumbents believe, as Corbett believed, that incumbency is important. We note from a casual inspection of the Voters' Pamphlet in evidence in this case that without exception the 27 candidates for re-election who advertised in that publication emphasized their incumbency. If incumbency is important to candidates, it is material.

Corbett argues that in an election contest it is essential that the contestant allege and prove that the violation affected the result of the election. She relies on *Skoko v. Clackamas R. F. P. Dist. No. 71,* 234 Or 214, 380 P2d 809 (1963); *Witham v. McNutt,* 186 Or 668, 208 P2d 459 (1949); *State v. Hayworth,* 152 Or 416, 53 P2d 1048 (1936); *Re Application of Riggs et al,* 105 Or 531, 207 P 175, 1005, 210 P 217 (1922); *Whitney v. Blackburn,* 17 Or 564, 21 P 874 (1889). It is sufficient to say that the cases relied on did not involve the Corrupt Practices Act and are not in point. In a case involving the Corrupt Practices Act, this court held that it was not essential to prove that the violation affected the result of the election. *Ramsey v. Howard,* 148 Or 542, 548, 36 P2d 602 (1934). For cases from other jurisdictions, see *Sparks v. Boggs,* 339 SW2d 480, 482 (Ky 1960); *Hawley v. Wallace,* 137 Minn 183, 163 NW 127 (1917); *Olsen v. Billberg,* 129 Minn 160, 151 NW 550 (1915); *Prentiss v. Dittmer,* 93 OS 314, 322, 112 NE 1021 (1916); *State v. Mitten,* 227 Wis 598, 278 NW 431, 434 (1938).

The Corrupt Practices Act was passed "to secure and protect the purity of the ballot." To require the

contestant in every case involving a violation of the Corrupt Practices Act, no matter how deliberate and material the violation, to prove that the violation affected the outcome of the election, would render the act nugatory and impossible of enforcement.

We, therefore, hold, as our findings compel us to hold, that Mrs. Corbett must be deprived of the Democratic nomination for Senator, Twelfth Senatorial District, Multnomah County, Position No. 4, and it is so ordered.

■ ORS 251.080, which was originally a part of section 49, Oregon Laws 1909, ch 3, provides in substance that if the court sets aside a nomination, it shall also declare as nominated the other person who received the highest number of votes at the election, and whose nomination is not apparently subject to a successful contest. There has been no suggestion that Cook violated any provision of the election laws. We, therefore, are required to order that Vernon Cook is the Democratic nominee for Senator, Twelfth Senatorial District, Multnomah County, Position No. 4, and it is so ordered.

The cause is reversed and remanded with instructions to enter a judgment in accordance with this opinion. The mandate shall issue forthwith.