Argued October 11, reversed October 22, petition for rehearing and motion to recall mandate denied November 1, 1974

# COMMITTEE TO RETAIN JUDGE JACOB TANZER, *Respondent, v.* LEE, *Appellant.*

527 P2d 247

*Nick Chaivoe,* Portland, and *Charles D. Burt,* Salem, argued the cause for appellant. With them on the brief was D. Keith Swanson, Salem.

*Owen M., Panner,* Bend, and *George M. Joseph,* Portland, argued the cause for respondent. With them on the brief were Clifford N. Carlsen, Jr., Portland, and Leslie M. Roberts, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, TONGUE, HOWELL, BRYSON, SLOPER and LEAVY, Justices.

HOWELL, J.

Plaintiff, the Committee to Retain Judge Jacob Tanzer, filed this action against Jason Lee seeking to declare Lee's nomination to the office of judge of the Oregon Court of Appeals vacant and to recover punitive damages and attorney fees. The jury found in favor of the plaintiff and awarded $2,500 punitive damages. The defendant appeals, alleging numerous assignments of error, including the failure of the court to sustain his demurrer on the grounds the plaintiff's complaint does not state a cause of action; failure of the court to grant his motion for a judgment of involuntary nonsuit; and failure to give certain instructions.

It is not necessary that we discuss all of the assignments of error made by the defendant, including the constitutional issues raised, because we conclude that the defendant's demurrer should have been sustained as the plaintiff's complaint did not allege a cause of action.

This action arises out of the 1974 primary election in which Jason Lee, the challenger, received a majority of votes to defeat Judge Jacob Tanzer, the incumbent on the Oregon Court of Appeals. The plaintiff contends that the defendant published cer-

tain false statements, and plaintiff's amended complaint alleges:

"III

"During the period of May 24, 1974 to May 28, 1974, the date of the election, defendant published and communicated advertising material through newspapers and radio within the state of Oregon which defendant knew contained false statements of material facts relating to the candidacy of Jacob Tanzer and to the plaintiff as follows:

" '$72,000.00

" 'On 2-29-74 my opponent, *the present Judge* decided that $72,000.00 should be paid from *your hard-earned TAX DOLLARS* for attorney's fees in a condemnation case. On 5-11-74 the law firm that received this money made a $200.00 contribution to the present Judge's campaign. (LEE accepts NO CONTRIBUTIONS.)'

"Said publication was false in that the present judge, Jacob Tanzer, did not decide the amount of attorneys' fees that were awarded in the case. This decision was made by the trial court. The award was affirmed by the Oregon Court of Appeals, of which Judge Tanzer was only one member. The affirming opinion did not decide the amount that should be paid; it held only that the Court of Appeals was without power to modify the trial court's award in that case. Defendant knew that his said publication was false.

"IV

"Plaintiff's purpose of promoting the candidacy of Jacob Tanzer for judge of the Court of Appeals was injured by the false publications and communications disseminated by defendant. Plaintiff received the sum of $13,177.50 in contributions during the period within 250 days preceding said election."

ORS 260.532, under which plaintiff's action was filed, states, in pertinent part:

"(1) No person shall write, print, publish, post, communicate or circulate, or cause to be written, printed, published, posted, communicated or circulated, any letter, circular, bill, placard, poster or other publication or communication, or cause any advertisement to be placed in a newspaper or any other publication, or singly or with others pay for any such advertisement, knowing such letter, circular, bill, placard, poster, communication, publication or advertisement to contain any false statement of material fact relating to any candidate, or political committee, or if he is candidate, to himself, or any false statement of material fact relating to any measure."

To prevail in a cause of action brought under ORS 260.532, a plaintiff must allege and prove that the defendant (1) published (2) a false statement (3) of a material fact (4) knowing it to be false.[1]

The plaintiff contends that the defendant's statement was false in two particulars: (1) Judge Tanzer

---

[1] This court has interpreted the former Corrupt Practices Act [amended by Or Laws 1973, ch 744] on several occasions. *See* Thornton v. Johnson, 253 Or 342, 453 P2d 178 (1969); Mosee v. Clark, 253 Or 83, 453 P2d 176 (1969); and Cook v. Corbett, 251 Or 263, 446 P2d 179 (1968).

A violation of the former Corrupt Practices Act could result in a fine of up to $1,000 or imprisonment for up to one year, or both. [Repealed by Or Laws 1973, ch 744, § 36.] Also, the former law requires that the court not only set aside the nomination or election of the violator, but "also declare as nominated or elected for or to the office in question the other person who received the highest number of votes at the election * * *." [Repealed by Or Laws 1969, ch 617, § 1.]

In contrast, the present law allows only for the recovery of general and punitive damages and attorney fees, ORS 260.532 (5), and provides that a violator "shall be deprived of the nomination or election and the nomination or office shall be declared vacant." ORS 260.532(7).

did not "decide" the condemnation case mentioned in defendant's advertisement, because the decision was made by the entire court, and (2) the decision of the Court of Appeals did not "decide" the amount of attorney fees that should be paid in the condemnation case.

We believe that the distinctions attempted to be made by the plaintiff are without merit. Judge Tanzer wrote the opinion of the Court of Appeals, and to this extent he "decided" the case which was under consideration. It is true, of course, that the "decision" was that of the Court of Appeals, but it is common practice to refer to the judge who wrote the opinion for the court as the judge who "decided" the case. Whether the appellate judge is said to have "decided," "held," "concluded," or to have "written the decision" is only a question of semantics, and to say that a judge "decided" a certain case does not constitute a false statement.

The same reasoning applies to the plaintiff's contention that the Court of Appeals did not decide the amount of attorney fees to be paid in the condemnation case. The issue presented to the Court of Appeals was whether there was substantial evidence to sustain the amount of attorney fees awarded by the trial court. The decision rendered by the Court of Appeals and authored by Judge Tanzer held that there was sufficient evidence and therefore the award made by the trial court was affirmed. To that extent, the decision affirmed the award of the attorney fees. Again we believe that it requires an exercise in technical legal semantics to attempt to distinguish between whether attorney fees are part of costs or whether there was or was not substantial evidence presented in the trial

court for the Court of Appeals to affirm the award. The statement in the published advertisement was not false.

To attempt to draw distinctions in the manner suggested by plaintiff would lead the courts into a linguistic quagmire over the meaning of certain phrases or conclusions which are important only to lawyers and may even then be the subject of dispute within the profession. As we stated in *Thornton v. Johnson*, 253 Or 342, 453 P2d 178 (1969), the courts are reluctant to be placed in the position of becoming "censors of political campaigns" and to "judge the reasonableness of all campaign statements and the possible inferences to be drawn therefrom." 253 Or at 362.

The most that could be said about defendant's advertisement that Judge Tanzer "decided" and that attorney fees "should be paid" as a result of the decision of the Court of Appeals is that the statements were ambiguous and might have permitted an erroneous inference to have been drawn therefrom. This court in *Mosee v. Clark*, 253 Or 83, 453 P2d 176 (1969), held that such an ambiguous statement, or the possible erroneous inference to be drawn therefrom, did not constitute a violation of the Corrupt Practices Act.

Reversed with directions to enter a judgment for defendant.[2] The mandate shall issue forthwith.

---

[2] Although not raised by the parties, a question exists as to whether the Committee to Retain Judge Jacob Tanzer is the proper party to bring the action in this case in the absence of an allegation that something false was said about the Committee. ORS 260.532 (1) prohibits a knowing publication or communication of a false statement of material fact relating to any candidate *or* political committee. Subsection (4) allows to any candidate

O'CONNELL, C. J., dissenting.

The majority concedes that the statements in question "were ambiguous and might have permitted an erroneous inference to have been drawn therefrom." The majority then relies upon *Mosee v. Clark*,[1] for the proposition that an ambiguous statement is not false under the Corrupt Practices Act, even though one of the inferences which can be drawn from the statement is false. If *Mosee v. Clark* stands for that proposition, it certainly should be overruled. It would seem patently erroneous to hold that a candidate is privileged under the Corrupt Practices Act to make an ambiguous statement capable of both a true and a false meaning with the purpose of deceiving a part of the electorate. The Corrupt Practices Act was adopted "To secure and protect the purity of the ballot."[2] To effect this objective, the standard of conduct of candidates in making representations to the electorate should be at least as high as that which we apply in an action for

or political committee which has been aggrieved by a violation of subsection (1) a right of action against the person alleged to have committed the violation. That subsection also provides that the aggrieved party may file the action in the circuit court for the county in which the defendant resides or can be found. The statute gives a cause of action to the candidate if he is the aggrieved party or to the political committee if it has been the aggrieved party.

It is possible for a candidate to have a political committee in each of the 36 counties. It is doubtful that the legislature intended to give each committee a cause of action for the same alleged false statement about their candidate, nor that a successful candidate who won 35 such cases and lost one should thereby lose the nomination.

The fact that subsection (6) of ORS 260.532 gives a political committee standing to bring an action assures that the committee instead of all its members will have the legal standing to sue in the event that a false statement is made about it.

[1] 253 Or 83, 453 P2d 176 (1969).

[2] Or Laws 1909, ch 3.

fraud and deceit.[9] There we say that "ambiguous statements capable of two meanings, one of which is true and the other false, constitute misrepresentations if the false meaning is understood as the true one; and if this was the result intended, it is fraudulent."[4]

Neither in *Mosee v. Clark* nor in any other of our cases have we suggested that a candidate may insulate himself from the sanctions of the Corrupt Practices Act by making ambiguous statements calculated to deceive a part of the electorate. The most that *Mosee v. Clark* can stand for is that the court would not infer from the particular ambiguous statement an intent to mislead the public. The court was careful to point out that "In the case at bar there was no deliberate falsehood,"[5] thus indicating that if the same ambiguous statement hade been made with the intent to deceive, the Act would have been violated.

The majority in the present case takes the position that it is not important to inquire whether Mr. Lee intended to deceive the public by his ambiguous statements. In my opinion, this is an obviously erroneous and indefensible interpretation of our Corrupt Practices Act which invites unscrupulous candidates to formulate cunning ambiguities capable of deceiving large numbers of the electorate. The majority speaks

---

[9] "By analogy to the law of defamation, the important question should not be whether a statement was capable of more than one meaning, but whether the language was understood in its unlawful sense. There should be no defense simply because the statement permitted an innocent interpretation, especially if the inference of a false fact was intended." Rees, Uncandid Candidates and the Oregon Corrupt Practices Act, 50 Or L Rev 299, 308 (1971). See McLeod v. Tribune Publishing Co., 52 Cal2d 536, 548, 343 P2d 36, 42 (1959).

[4] 1 Harper & James, The Law of Torts 587, § 7.14 (1956).

[5] 253 Or at 88.

of the "linguistic quagmire" into which we, the courts, would be led if we were to treat ambiguous statements as false and that we would become "censors of political campaigns" judging the reasonableness of all campaign statements and the possible inferences to be drawn therefrom. On the same kind of reasoning, we should get out of the business of deciding fraud and deceit cases.

The fallacy in the court's position is quite clear. The legislature, in enacting ORS 260.532, intended that the jury and not the court was to resolve the questions of falsity and intent to deceive. The only way that the court can get into the "linguistic quagmire" and become "censors of political campaigns" is to usurp the function of the jury,[9] and that is precisely what the majority has done in the present case.

The statement that Judge Tanzer decided that $72,-000 *should* be paid for attorney's fees is true in one sense and false in another. A large number of people in this state do not know how an appellate court operates and it is possible that some of the voters were led to believe that Judge Tanzer, either acting individually or as a part of a collegial court, had the authority to decide how much attorney's fees should be paid in a particular case. A voter who believed this to be true, might well decide to vote against Judge Tanzer, whereas if he realized that neither Judge Tanzer nor the Court of Appeals had the authority to fix attorney's fees, he might well cast his vote the other way. To say, as the majority does, that the ambiguity riding on the word "decided" and "should pay" rather than some other expression "is only a question of semantics," is

---

[9] *See* Constitution of Oregon, Art. VII (amended), § 3; ORS 19.125.

to disregard the significance which a voter might attach to those words if understood as being used in one way rather than another. The unfavorable image of the legal profession arises partly out of the feeling on the part of a large segment of the public that lawyers charge excessive fees. Those holding this view would, I suspect, similarly criticize a judge who fixed a high fee.

When the $72,000 attorney fee referred to in Mr. Lee's advertisement was awarded in the trial court, the matter became the subject of editorial comment and general public concern. The jury, in finding against Mr. Lee in the present case, could have decided that Mr. Lee, knowing of this general criticism, used the statement that his opponent "decided" that "$72,-000 should be paid" for the purpose of inducing the voters to believe that Judge Tanzer actually had a part in fixing the $72,000 fee in the condemnation case. There was ample evidence to prove that Mr. Lee knew that neither Judge Tanzer nor the Court of Appeals had authority to decide how much attorney's fees should be awarded in a particular case and that their only function was to determine whether there was sufficient evidence to support the trial court's award.

There was also evidence that as a caption for the statement in question, Mr. Lee had put in large letters "NOT FOR SALE."[2] The jury could believe that the caption, together with the statement that "the firm that received this money [$72,000] made a $200.00 con-

---

[2] This caption was not included in the alleged false statement set out in the complaint. Defendant contends that because the caption was not recited as a part of the alleged false statement, it cannot be used to prove any element in the case. I am unable to see why the caption cannot be used to show Mr. Lee's intent in publishing the advertisement in question.

tribution to the present Judge's campaign," was intended to convey the idea that Mr. Tanzer sold his vote to the attorneys who were awarded the fee but that Mr. Lee was "not for sale." The jury could infer that the same kind of ambiguous insinuation was intended in using the words "decided" and "should pay," so that the voter would go to the polls with the belief that Judge Tanzer had fixed an exorbitant fee.

I think that the majority is led into error by its concentration on the word "decided" as if the question of the falsity of Mr. Lee's statement could be determined by an examination of the meaning of that word alone. This approach fails to take account of the fact that words must be dealt with in relation to the other words which they accompany and in relation to the circumstances in which they are used. A series of absolutely true statements, taken separately, can convey an utterly false idea when heard together. Even if the word "decided" could be treated as having only one meaning, the statements that Judge Tanzer decided that $72,000 attorney's fees should be paid to a law firm, and that the law firm which received the fee made a contribution to Judge Tanzer, and that Mr. Lee accepts no contributions, although all separately true, could convey the false idea that Judge Tanzer made the decision because he was to be the recipient of a campaign contribution. The addition of another presumptively true statement, "not for sale" would clearly permit a false inference that Judge Tanzer was influenced in making his decision. It was for the jury to decide whether these statements were capable of carrying a false meaning and whether Mr. Lee intended that to occur.

McALLISTER and TONGUE, JJ., join in this dissent.