Argued and submitted January 11, 2016; general judgment reversed and
remanded in part, otherwise affirmed, supplemental judgment reversed
July 12, 2017

Pam BRYANT,
*Plaintiff-Appellant,*

*v.*

RECALL FOR LOWELL'S FUTURE COMMITTEE,
Kenneth Hern, and Nancy Garratt,
*Defendants-Respondents.*

Lane County Circuit Court
161400285; A156876

400 P3d 980

David Bahr argued the cause for appellant. With him on
the briefs was Bahr Law Offices, P.C.

Edmund J. Spinney argued the cause and filed the briefs
for respondents.

Before Armstrong, Presiding Judge, and Egan, Judge,
and Shorr, Judge.

## ARMSTRONG, P. J.

Plaintiff is a former city councilor for the city of Lowell. Defendant Recall for Lowell's Future Committee is a petition committee that was organized to support the recall election against plaintiff. Defendant Hern was the chief petitioner for that effort, and defendant Garratt is the committee's treasurer. After the election, which plaintiff lost, plaintiff brought suit under ORS 260.532, alleging that defendants had violated that statute by making seven factually false statements in election materials in support of plaintiff's recall. Defendants moved to strike the complaint under ORS 31.150, Oregon's "anti-SLAPP" statute. The trial court granted that motion and dismissed the case. Plaintiff appeals. Because we conclude that plaintiff did present a *prima facie* case, as required to defeat an anti-SLAPP motion to strike, with respect to four of the seven statements, we reverse and remand in part and otherwise affirm. As a result, we also reverse the supplemental judgment awarding costs and attorney fees to defendants under ORS 31.152.

Under ORS 31.150, a court engages in a two-step burden-shifting process to resolve a special motion to strike. *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013). First, the court must determine whether the defendant has met the burden to show that the claim "'arises out of' one or more protected activities described in subsection (2)." *Id.* The parties agree that defendants met that burden in this case. Thus, this case turns on the second step, where "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a *prima facie* case." ORS 31.150(3). We review a trial court's grant of a special motion to strike for legal error. *Plotkin v. SAIF*, 280 Or App 812, 815, 385 P3d 1167 (2016), *rev den*, 360 Or 851 (2017).

Because the question we must answer is whether plaintiff's evidence was sufficient to establish a *prima facie* case, we state the facts in the light most favorable to plaintiff. *Handy v. Lane County*, 360 Or 605, 608 n 1, 385 P3d 1016 (2016). That means "we consider plaintiff's evidence and

draw the reasonable inferences from that evidence in favor of plaintiff." *Plotkin*, 280 Or App at 815-16. Where there is a factual conflict in the evidence, we adopt the version that is most favorable to plaintiff, as long as it is supported by sufficient evidence. *Id.* We will consider defendants' opposing evidence "only to determine if it defeats plaintiff's showing as a matter of law." *Id.* (quotation marks and brackets omitted). We start by describing the uncontested procedural facts of this case, and then, in our analysis, turn to the facts as provided in the pleadings and the supporting and opposing declarations and exhibits submitted to the trial court, ORS 31.150(4), viewing that evidence in the light most favorable to plaintiff.

Plaintiff was a city councilor for the city of Lowell. In December 2013, she was defeated in a recall election for her position. Defendant Hern, as chief petitioner for plaintiff's recall, had signed a recall petition containing "statements of reasons for demanding [a] recall," and which was used to obtain voter signatures to support a recall. Before the election, defendants also sent to voters in Lowell a flyer entitled "Facts and Information about Pam Bryant and Gary Reese." Defendants sent the flyer for the purpose of persuading voters to vote in favor of plaintiff's recall. Following the election, plaintiff brought a complaint against defendants claiming that they had violated ORS 260.532[1] because the petition

---

[1] ORS 260.532 provides, in part:

"(1) No person shall cause to be written, printed, published, posted, communicated or circulated, any letter, circular, bill, placard, poster, photograph or other publication, or cause any advertisement to be placed in a publication, or singly or with others pay for any advertisement, with knowledge or with reckless disregard that the letter, circular, bill, placard, poster, photograph, publication or advertisement contains a false statement of material fact relating to any candidate, political committee or measure.

"* * * * *

"(5) Any candidate or political committee aggrieved by a violation of this section shall have a right of action against the person alleged to have committed the violation. The aggrieved party may file the action in the circuit court for any county in this state in which a defendant resides or can be found or, if the defendant is a nonresident of this state, in the circuit court for any county in which the publication occurred. To prevail in such an action, the plaintiff must show by clear and convincing evidence that the defendant violated subsection (1) of this section.

"(6) A plaintiff who prevails in an action provided by subsection (5) of this section may recover economic and noneconomic damages, as defined in

and flyer contained seven false statements and defendants either knew, or recklessly disregarded, "that their messages presented factually false statements that were intended to mislead voters in the recall election and cause [plaintiff's] defeat." Those seven statements are as follows:

1. "[Plaintiff] inferred [*sic*] City Administrator Chuck Spies was involved in missing city money. Her false inference [*sic*] nearly cost the city $20,000 for an investigation and a law suite [*sic*] against the City."

2. "[Plaintiff] cost the City money by calling the City Attorney without the authorization to do so."

3. "[Plaintiff] was then fined by the State of Oregon for not following the rules for her publication 'The Voice.'"

4. "[Plaintiff] has recklessly charged city staff with unsupported allegations, and thus placed the city at risk of ruining people's careers and reputations with no foundation, all of which necessitated $1,927.00 of unbudgeted expenditures for legal fees."

5. "[Plaintiff] incorrectly asserts that she formed 'Save-Our-Schools Lowell' to raise money for our schools."

6. "Save-Our-Schools Lowell does not exist."

7. "[Plaintiff] made a personal recording of a city council executive session meeting in violation of state law."

In response to the complaint, defendants filed a special motion to strike under ORS 31.150, Oregon's anti-SLAPP statute. With regard to plaintiff's *prima facie* case, defendants admitted that they had published the statements. They contested, however, that the statements were of fact, false, or material, and that they knew the statements were false or recklessly disregarded the truth or falsity of the statements. Defendants submitted declarations and exhibits to support their assertions. In response, plaintiff argued that defendants' special motion to strike should be

ORS 31.710, or $2,500, whichever is greater. The court may award such additional equitable relief as it considers necessary or proper. The equitable relief may include, but is not limited to, a requirement that a retraction of the false statement be disseminated in the manner directed by the court. Proof of entitlement to economic and noneconomic damages must be by a preponderance of evidence. The court shall award the prevailing party reasonable attorney fees at trial and on appeal."

dismissed because they had failed to comply with UTCR 5.010, which requires a moving party to confer with the other party before filing a motion under ORCP 21 and requires the moving party to file a certificate of compliance with the rule. Plaintiff also submitted declarations and exhibits in support of her response, arguing that she had met her burden to establish a *prima facie* case sufficient to defeat defendants' special motion to strike.

After receiving plaintiff's response, defendants filed a late UTCR 5.010 certificate of compliance. Defendants also asked under UTCR 1.100 that the trial court grant them relief from application of UTCR 5.010 so that they could file the late certificate. Alternatively, defendants argued that UTCR 5.010 does not apply to a special motion to strike filed under ORS 31.150.

At the hearing, the trial court indicated that it did not believe that UTCR 5.010 applied to defendants' motion, but did not otherwise address it. Following the hearing, the trial court issued a written order granting defendants' special motion to strike. The court concluded that plaintiff had not met her burden to establish a *prima facie* case that the statements were false assertions of fact under the standard for falsity applicable to an ORS 260.532 claim. Accordingly, the trial court dismissed plaintiff's complaint without prejudice, ORS 31.150(1). In a supplemental judgment, the trial court awarded defendants costs and attorney fees under ORS 31.152.

On appeal, plaintiff assigns error to the trial court's grant of defendants' special motion to strike, both on the ground that the trial court was required to deny the motion under UTCR 5.010 and on the ground that she had established a *prima facie* case, under ORS 31.150. Plaintiff also appeals the supplemental judgment awarding defendants costs and attorney fees. We first address plaintiff's arguments based on UTCR 5.010.

## I. UTCR 5.010

UTCR 5.010 provides, in part:

"(1)   The court will deny any motion made pursuant to ORCP 21 and 23, except a motion to dismiss: (a) for failure

to state a claim; or, (b) for lack of jurisdiction, unless the moving party, before filing the motion, makes a good faith effort to confer with the other party(ies) concerning the issues in dispute.

"* * * * *

"(3) The moving party must file a certificate of compliance with the rule at the same time the motion is filed. The certificate will be sufficient if it states either that the parties conferred or contains facts showing good cause for not conferring."

Plaintiff argues that defendants were required to comply with UTCR 5.010 because ORS 31.150(1) provides that "[t]he special motion to strike shall be treated as a motion to dismiss under ORCP 21 A" and that the trial court was required to dismiss defendants' motion when they failed to comply with UTCR 5.010.

We disagree. By its plain terms, UTCR 5.010 applies to a motion "made pursuant to ORCP 21." A motion "made pursuant to ORCP 21" is a motion that raises the substantive issues listed in ORCP 21. *See* ORCP 21 A ("[T]he following defenses may at the option of the pleader be made by motion to dismiss: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) that there is another action pending between the same parties for the same cause, (4) that plaintiff has not the legal capacity to sue, (5) insufficiency of summons or process or insufficiency of service of summons or process, (6) that the party asserting the claim is not the real party in interest, (7) failure to join a party under Rule 29, (8) failure to state ultimate facts sufficient to constitute a claim, and (9) that the pleading shows that the action has not been commenced within the time limited by statute."); ORCP 21 B (motion for judgment on the pleadings); ORCP 21 D (motion to make more definite and certain); ORCP 21 E (motion to strike "any sham, frivolous, or irrelevant" pleading, defense, or matter inserted in pleading).

That UTCR 5.010 exempts certain types of substantive motions covered by ORCP 21 from the conferral

requirement in UTCR 5.010 indicates to us that the rule is focused on having parties confer before bringing a motion on certain types of substantive issues—presumably because those types of issues are amenable to resolution through conferral without involving the court. *See* UTCR 1.010(2) ("These rules shall be construed so as to achieve consistency with statutory provisions and to promote the just, speedy and inexpensive determination of every proceeding and action as well as the efficient use of judicial time and resources."). The rule does not impose the conferral requirement as just a procedure, without substance, to be met before filing. A special motion to strike made under ORS 31.150 is not a motion "made pursuant to ORCP 21," because a special motion to strike raises very different substantive issues than those raised in a motion under ORCP 21 that is subject to UTCR 5.010. *See generally* ORS 31.150 (providing for speedy resolution of unfounded claims that arise out of conduct in furtherance of the exercise of the constitutional right to petition or the constitutional right of free speech).

We do not agree that the directive in ORS 31.150 that "[t]he special motion to strike shall be treated as a motion to dismiss under ORCP 21 A" changes the application of the plain text of UTCR 5.010. In *Horton v. Western Protector Ins. Co.*, 217 Or App 443, 176 P3d 419 (2008), we examined the legislature's intention in including the sentence that "[t]he special motion to strike shall be treated as a motion to dismiss under ORCP 21 A." We concluded that the legislature intended to incorporate the timing procedure from ORCP 21 A for bringing a special motion to strike. *Id.* at 452-53 ("'I think the primary change that is going to occur from putting it in—saying that it is going to be treated as a motion to dismiss under 21 A—is going to be procedural as far as when and how, how, when you have to make this motion.'" (Quoting Tape Recording, Senate Judiciary Committee, HB 2460, May 15, 2001, Tape 142, Side B (statement of Dave Heynderickx).)). Nothing about ORS 31.150 suggests that a motion made under that statute is to be treated as the substantive equivalent of a motion "made pursuant to ORCP 21."

Accordingly, the trial court did not err in failing to dismiss defendants' special motion to strike based on UTCR 5.010.

## II.  *PRIMA FACIE* CASE UNDER ORS 31.150

We next address plaintiff's argument that she met her burden under ORS 31.150(3) to establish a *prima facie* case. A plaintiff "present[s] substantial evidence to support a *prima facie* case," ORS 31.150(3), if the plaintiff submits "sufficient evidence from which a reasonable trier of fact could find that the plaintiff met its burden of production." *Handy*, 360 Or at 622-23. For the claim asserted by plaintiff under ORS 260.532, she had the burden to show that defendants "(1) published (2) a false statement (3) of a material fact (4) with knowledge or reckless disregard that it was false."[2] *Yes on 24-367 Committee v. Deaton*, 276 Or App 347, 355, 367 P3d 937 (2016). Here, there is no dispute that defendants "published" the seven statements at issue. We thus must evaluate whether plaintiff met her burden of production on the remaining three elements with respect to the seven allegedly false statements.[3]

---

[2] Defendants assert that plaintiff also had to put on a *prima facie* case that she was "aggrieved" and that she suffered damages. We reject that argument.

Under ORS 260.532, a candidate is "aggrieved" when false statements of material fact are made about the candidate in an election. There is no additional showing of being "aggrieved" required by ORS 260.532. The use of "aggrieved" in subsection (5) of ORS 260.532 merely identifies who may bring the action; it is a question of standing, not a separate element of the claim. *See* ORS 260.532(5) ("Any candidate or political committee aggrieved by a violation of this section shall have a right of action against the person alleged to have committed the violation."); *see also Comm. of 1000 v. Eivers*, 296 Or 195, 199-200, 674 P2d 1159 (1983) (discussing whether a political committee was an aggrieved party such that it had standing to bring the action).

Likewise, under subsection (6), proof of damages is not required to prevail on a claim under ORS 260.532. Under that subsection, a prevailing party is entitled to *either* economic and noneconomic damages proven by a preponderance of the evidence *or* a statutory sum of $2,500, whichever is greater. *See* ORS 260.532(6) ("A plaintiff who prevails in an action provided by subsection (5) of this section may recover economic and noneconomic damages, as defined in ORS 31.710, or $2,500, whichever is greater."). Actual damages are not a required element of a claim under ORS 260.532, and thus plaintiff was not required to establish damages as part of her *prima facie* case to defeat defendants' special motion to strike.

[3] To the extent that defendants argue that plaintiff cannot establish a *prima facie* case because ORS 260.532 is unconstitutional, we decline to address that argument as insufficiently presented on appeal, particularly when the trial court did not rule on that basis.

## A.  *Falsity*

We recently summarized the showing that must be made to demonstrate that statements are "false" under ORS 260.532:

> "Statements are not '"false,"' under ORS 260.532(1), if 'any reasonable inference can be drawn from the evidence that the statement is factually correct or that the statement is merely an expression of opinion.' [*Comm. of 1000 v. Eivers*, 296 Or 195, 202, 674 P2d 1159 (1983).] Further, the 'mere possibility of an inference of falsity does not confer a right of action under ORS 260.532 if the evidence may also give rise to a reasonable inference of correct fact or to a reasonable inference that the comment is the expression of an opinion.' *Id.* An ambiguous statement, 'or the possible erroneous inference to be drawn therefrom, [does] not constitute a violation' of ORS 260.532. [*Comm. To Retain Judge Jacob Tanzer v. Lee*, 270 Or 215, 220, 527 P2d 247 (1974)] (citing *Mosee v. Clark*, 253 Or 83, 88, 453 P2d 176 (1969) ('The Legislative Assembly did not undertake to outlaw ambiguous political utterances.'))."

*Yes on 24-367 Committee*, 276 Or App at 355-56 (second brackets in original). In the defamation context, the Supreme Court recently discussed the difference between a statement of objective fact and an expression of opinion. The court stated:

> "[T]he dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact. To answer that question, we adopt the following three-part inquiry: (1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false."

*Neumann v. Liles*, 358 Or 706, 718-19, 369 P3d 1117 (2016). In applying that test, we must consider the defendant's words in the context in which they were made "to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact." *Id.* at 719 (quotation marks omitted); *see also Yes on 24-367 Committee*, 276 Or App at 353-54 (applying fact-opinion distinction developed

in defamation cases to determine if the plaintiff established a *prima facie* case under ORS 260.352).

Thus, to establish a *prima facie* case to defeat defendants' special motion to strike, plaintiff had to produce sufficient evidence to show that defendants' statements imply an assertion of objective fact and cannot reasonably be interpreted in a manner that makes them "factually correct." Addressing that question requires that we address each of the seven statements individually. As explained, plaintiff did meet that burden with respect to the statements numbered 2, 5, 6, and 7 below.

 1. "[Plaintiff] inferred [*sic*] City Administrator Chuck Spies was involved in missing city money. Her false inference [*sic*] nearly cost the city $20,000 for an investigation and a law suite [*sic*] against the City."

With regard to this statement, viewed in the light most favorable to plaintiff, the facts are that a member of the public asked plaintiff if she knew about missing city money. At a city council meeting in February 2011, as part of "other business," plaintiff "asked if anyone had knowledge of any missing money," after receiving an answer that no one did know of any missing money, plaintiff "thanked them, and the meeting was adjourned." Immediately after the meeting was adjourned, the city administrator was publicly very angry with plaintiff because he believed she was accusing him of wrongdoing, and later he sent a letter to the mayor and city councilors demanding a public retraction and apology from plaintiff, as well as a full investigation, or else he would resign. After being confronted by the mayor and city councilors at an executive session, plaintiff decided to make a statement because she did not support an investigation, having had her question answered at the council meeting. In her statement, plaintiff explained that she felt that she was required to inquire after a member of the public asked her if she knew about missing money, and plaintiff expressed regret for any discomfort that she had caused the city administrator or his staff. Both plaintiff and the member of the public were satisfied with the answer that they had received at the council meeting. However, two city council members moved to hold an investigation. The

city administrator and those two city council members ultimately decided not to support an investigation after the city attorney told the city council that an investigation could cost over $20,000.

We conclude that the first statement—"[plaintiff] inferred [*sic*] City Administrator Chuck Spies was involved in missing city money"—implies an assertion of objective fact, but a reasonable factfinder could interpret the statement as "factually correct." The statement was made in the recall petition as a reason for holding a recall, it contains no hyperbolic or figurative language, and it is capable of being proved true or false. Despite defendants' argument to the contrary, whether or not plaintiff "inferred" [*sic*, "implied"] that the city administrator was involved in missing money is not a word that necessarily suggests an expression of an opinion. In the context in which it was used here, it implies an assertion of objective fact. However, plaintiff's question—which was made at a public city council meeting, directly implied that there was missing city money, and was made without plaintiff making any attempt to first obtain facts—could reasonably be interpreted as implying that the city administrator was involved in missing money.

We conclude that the second statement—"[h]er false inference [*sic*] nearly cost the city $20,000 for an investigation and a law suite [*sic*] against the City"—does not imply an assertion of objective fact. The use of the word "nearly" signals that the speaker is only speculating about what could have happened if events had unfolded differently. That is not a statement that is capable of being proved true or false. *See Sumner v. Bennett*, 45 Or App 275, 280-81, 608 P2d 566 (1980) (evaluation of the likely effect of a vote on certain bills is an expression of opinion). Accordingly, we conclude that plaintiff did not meet her burden for a *prima facie* claim under ORS 260.532 with respect to those statements.

2. "[Plaintiff] cost the City money by calling the City Attorney without the authorization to do so."

Plaintiff does not dispute that she called the city attorney for legal advice in her capacity as a city councilor, which resulted in the city attorney billing the city for time spent advising plaintiff. Plaintiff asserts, however, that it

is false to say that she did so "without authorization." As to that aspect of the statement, in the light most favorable to plaintiff, she was not required to obtain "authorization" to contact the city attorney. The Lowell City Code provides that it is the city attorney's responsibility to provide legal advice to city councilors and may do so directly. Lowell Revised Code § 2.062 ("Responsibilities of the City Attorney are as follows: (a) Provide legal advice to the City Administrator or, other City Staff and City Council members."); id. § 2.063(a) ("The City Attorney may provide legal advice directly to the City Staff and City Council members, but may take legal action only with approval of the City Administrator or by a majority decision of the City Council."). There is no city policy or prohibition against city councilors contacting the city attorney directly. Here, the city administrator also did not object to plaintiff contacting the city attorney directly because "he was giving her valuable training" that the city administrator could not provide because plaintiff refused to speak with the city administrator directly.

Based on the above, defendants' statement cannot be reasonably interpreted in a manner that makes it "factually correct." The statement also implies an assertion of objective fact because the context purports to state an objective fact that was provided in the recall petition as one of the "statements of reasons for demanding recall," no figurative or hyperbolic language is used in the statement, and it is capable of being proved true or false. Defendants did not produce evidence that defeats plaintiff's showing as a matter of law.

3. "[Plaintiff] was then fined by the State of Oregon for not following the rules for her publication 'The Voice.'"

The above statement was made by defendants in the recall petition as a reason for demanding a recall, and was made directly after the statement "[plaintiff] published false statements in her publication 'The Voice,'" which provides context for defendants' use of the words "*then* fined" in the statement at issue.

Viewed in the light most favorable to plaintiff, plaintiff was treasurer for "Citizens of Lowell Against Wasteful Spending," which paid a $250 fine for failing to timely file

a Statement of Organization and Campaign Account Information after the political committee made an expenditure. The expenditure was to mail a flyer called the Voice to voters. That fine and the reason for it was publicly documented in a Final Order by Default issued by the Office of the Secretary of State.

We readily conclude that defendants' statement implies an assertion of objective fact for the same reasons as statement 2. However, we conclude that defendants' statement could be reasonably interpreted in a manner that makes it "factually correct." Although the use of the words "then fined" could be understood to mean that plaintiff was fined as a result of making false statements in "The Voice," it could also be understood as merely a statement of timing—that plaintiff was fined after publishing the Voice—which is factually correct. Additionally, it is reasonable to interpret the statement that plaintiff was fined for "failing to follow the rules for her publication 'The Voice'" as factually correct because plaintiff's political action committee was fined for failing to file appropriate documentation after making the expenditure to publish the Voice. Accordingly, we conclude that plaintiff did not meet her burden for a *prima facie* claim under ORS 260.532 with respect to that statement.

4. "[Plaintiff] has recklessly charged city staff with unsupported allegations, and thus placed the city at risk of ruining people's careers and reputations with no foundation, all of which necessitated $1,927.00 of unbudgeted expenditures for legal fees."

In addition to the events regarding plaintiff's inquiry about missing money discussed in connection with statement 1, in June 2012, plaintiff requested at a public city council meeting for an agenda item to discuss disciplinary action against the city administrator. In response, the city administrator filed a tort claim notice against the city. As a result, the city attorney spent time responding, which defendants assert caused the city to incur $1,927 in unbudgeted legal expenses.

We conclude that the statement does not imply an assertion of objective fact. The statement was made in defendants' flyer sent to voters under a heading entitled "Failure

to Respect City Budget and Council Protocols," and it refers to statements or questions that plaintiff made in public city council meetings that could be interpreted as implying wrongdoing by the city administrator. Although that context is not dispositive of the issue, any impression of conveying an objective fact is negated by the hyperbolic words used in the statement. Accordingly, plaintiff did not make a *prima facie* case for a claim under ORS 260.532 for that statement.

5. "[Plaintiff] incorrectly asserts that she formed 'Save-Our-Schools Lowell' to raise money for our schools."

6. "Save-Our-Schools Lowell does not exist."

We review statements 5 and 6 together because they are informed by the same evidence. Viewed in the light most favorable to plaintiff, plaintiff is the treasurer for Save Our Schools Lowell, which is a political action committee recognized by the Secretary of State. The declared nature of the committee is "to generate support and procure funding for [a] new school." (Capitalization omitted.)

We conclude that defendants' statements imply assertions of objective fact. The statements appeared in the flyer sent to voters, under the heading "FALSE STATE-MENTS." The statements do not use figurative or hyperbolic words and are capable of being proved true or false. Viewing the evidence in the light most favorable to plaintiff, defendants' statements cannot be reasonably interpreted to be "factually correct." Defendants did not produce evidence that defeats plaintiff's showing as a matter of law.

7. "[Plaintiff] made a personal recording of a city council executive session meeting in violation of state law."

Plaintiff presented evidence that she openly recorded public city council meetings, but that she never recorded an executive session. During one executive session, she asked if she could record it, but, because there was an objection to her doing so, she did not record it. At another council meeting that included an executive session, plaintiff openly turned off her recorder for the executive session portion of the meeting. The mayor ended the executive session and then plaintiff openly turned her recorder back on—after a heated discussion about the mayor not intending to record or allow the

public to be present for an "off the record" discussion with the city councilors requested by the city administrator that was not part of the executive session.

We conclude that defendants' statement implies an assertion of objective fact. The statement appeared in the flyer sent to voters, under the heading "VIOLATIONS." The statement does not use figurative or hyperbolic words and is capable of being proved true or false. Viewed in the light most favorable to plaintiff, defendants' statements cannot be reasonably interpreted to be "factually correct." Defendants did not produce evidence that defeats plaintiff's showing as a matter of law.

Because plaintiff met her burden of establishing a *prima facie* case for the element of falsity for statements numbered 2, 5, 6, and 7 above, we next address whether plaintiff met her burden on the element of materiality with respect to those statements.

B.  *Materiality*

To prevail on a claim under ORS 260.532, the plaintiff must show that the false statements were of "material fact." No case has elaborated on the meaning of "material fact" in ORS 260.532.[4] However, the term "material fact" is also a phrase that has a well-established legal meaning when used in the context of a false statement. *See Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 634, 240 P3d 1122 (2010) (statutory terms that are not defined "that have well-defined legal meanings are given those specialized meanings"). Generally, "[a] fact is 'material' if it could or would influence significantly the hearer's decision-making process." *In re Dugger*, 334 Or 602, 609, 54

---

[4] We note that two Supreme Court cases have discussed the term "material" as used in a different section of the election laws covering elections violations. Under *former* ORS 251.025 (1967), *renumbered as* ORS 258.016 (1983), the court determined that a "material violation," in the context of an election violation for making false statements in an advertisement, means "substantial," as compared to "trivial" or "unimportant." *Cook v. Corbett*, 251 Or 263, 271, 446 P2d 179 (1968). The court rejected the argument that, to be material, the violation had to change the result of the election. *Id.* However, the court also later clarified that, to be a "material violation," the "violation must be capable of having some possible effect upon the election." *Thornton v. Johnson*, 253 Or 342, 356, 453 P2d 178 (1969). Our discussion of what constitutes a false statement of "material fact" is consistent with that view of the meaning of "material" under the election laws.

P3d 595 (2002) (discussing that a misrepresentation is a false statement of material fact or nondisclosure of material fact); *see also Hampton v. Sabin*, 49 Or App 1041, 1049, 621 P2d 1202 (1980), *rev den*, 290 Or 519 (1981) (discussing a misrepresentation claim and stating that "[s]uch a representation is material inasmuch as 'it would be likely to affect the conduct of a reasonable man with reference to a transaction with another person'" (quoting *Millikin v. Green*, 283 Or 283, 285, 583 P2d 548 (1978))); *Black's Law Dictionary* 611 (7th ed 1999) (defining "material fact" as "[a] fact that is significant or essential to the issue or matter at hand"); *id.* at 991 (defining "material" in part as "[o]f such a nature that knowledge of the item would affect a person's decision-making process; significant; essential"). Giving "material fact" its well-established legal meaning, in the context of ORS 260.532, a false statement of fact is "material" if it could significantly influence the mind of a reasonable voter in deciding how to vote in the election.

Here, the false statements were made in two publications. Statement 2 was made in the recall petition as a reason for demanding a recall, which defendants used to obtain signatures from voters to support a recall. Statements 5, 6, and 7 were in a flyer mailed to voters entitled "Facts and Information about Pam Bryant and Gary Reese," and defendants admitted that "the flyer was sent to the voters of the city of Lowell to persuade them to vote in favor of the petition for recall." In addition, the false statements purported that plaintiff had lied to the voters, had cost the city legal fee expenditures without authorization, and had violated law.

We conclude that, based on the context in which the statements were made, along with the substance of the statements themselves, plaintiff established a *prima facie* case that the false statements were "material," in that they could significantly influence the mind of a reasonable voter in the recall election. Contrary to defendants' arguments, plaintiff was not required to show that any voter did, in fact, change his or her vote because of defendants' false statements to meet her *prima facie* burden on the element of materiality. *See Cook v. Corbett*, 251 Or 263, 271, 446 P2d 179 (1968)

(rejecting argument that, to be a material violation of the election laws, a false statement had to change the result of the election).

## C. *Reckless Disregard*

Finally, to prevail on a claim under ORS 260.532, plaintiff must show that defendants made the false statements of material fact "with knowledge or reckless disregard" that the statements were false. *Yes on 24-367 Committee*, 276 Or App at 355. At the anti-SLAPP stage of the proceedings, "plaintiff does not have to *prove* that defendants acted knowingly or recklessly. Plaintiff need only present substantial evidence of a *prima facie* case." *Id.* at 359 (emphasis in original). A failure to submit direct evidence of defendants' mental state is not fatal to plaintiff's claim, as long as we can draw reasonable inferences from the evidence that supports plaintiff's *prima facie* case. *Id.* at 359-60. We reiterate that, in conducting our analysis, we view all reasonable inferences in favor of plaintiff, and we only consider defendants' countervailing evidence if it defeats plaintiff's showing *as a matter of law*. Here, a *prima facie* showing that defendants acted with reckless disregard is established from the reasonable inferences that may be drawn from the evidence.

Statement 2—"[plaintiff] cost the City money by calling the City Attorney without the authorization to do so"—is patently wrong based on the Lowell City Code and the declaration of the city administrator submitted by defendants. Defendants provided evidence that they made that statement based on the mayor telling defendant Hern that plaintiff was required to consult with the city administrator before contacting the city attorney. However, even according to the information that defendants assert that they had obtained, it was the city administrator who determined how contact with the city attorney was to be handled, not the mayor. Despite that information, there is no evidence that defendants sought to determine whether the city administrator objected to plaintiff contacting the city attorney. It is a reasonable inference that defendants, at least, recklessly disregarded whether their statement that plaintiff contacted the city attorney "without authorization" was false.

Statements 5 and 6—"[plaintiff] incorrectly asserts that she formed 'Save-Our-Schools Lowell' to raise money for our schools" and "Save-Our-Schools Lowell does not exist"—also are patently wrong based on the filing for the organization with the Secretary of State. It is a reasonable inference that defendants were reckless in not learning about that filing before making the statements. Defendants' assertion that they "did not think" to look in the political registry because school fundraising did not appear to them to be a legitimate political action committee purpose does not defeat plaintiff's showing as a matter of law.

Finally, the evidence with regard to statement 7—"[plaintiff] made a personal recording of a city council executive session meeting in violation of state law"—supports a reasonable inference that defendants acted with reckless disregard whether the statement was false. Defendants assert that they "believed" that making a personal recording of an executive session was in violation of law and that the recording plaintiff made was of an executive session. However, the reasonable inference to be drawn from plaintiff's evidence is that the city records demonstrate that the executive session ended before plaintiff started her recording. That defendants may have believed otherwise does not defeat, as a matter of law, the reasonable inference that defendants recklessly disregarded whether the statement was false before publishing it.

Accordingly, we conclude that plaintiff did establish a *prima facie* case under ORS 260.532 with respect to statements 2, 5, 6, and 7. Thus, the trial court erred in dismissing plaintiff's complaint under ORS 31.150 with respect to those statements.

Additionally, because we conclude that the trial court erred in dismissing plaintiff's complaint in its entirety, we also reverse the supplemental judgment awarding defendants costs and attorney fees under ORS 31.152 based on the dismissal of plaintiff's complaint under ORS 31.150.

General judgment reversed and remanded in part; otherwise affirmed. Supplemental judgment reversed.