LAGESEN, P. J.
*403 This is a tort action for defamation and invasion of privacy. Defendant's friend, Ferguson, accused plaintiff of sexual misconduct. The accusations resulted in criminal charges against plaintiff. He was acquitted of those charges. Before, during, and after plaintiff's trial, defendant made online statements about the case that were sympathetic to her friend. Plaintiff alleges that those statements were defamatory and effected a tortious invasion of privacy. On defendant's special motion to strike under Oregon's anti-Strategic Lawsuits *542 Against Public Participation (anti-SLAPP) statute, ORS 31.150, the trial court concluded that the statements at issue were nonactionable statements of opinion protected by the First Amendment to the United States Constitution under the framework established in Neumann v. Liles , 358 Or. 706, 369 P.3d 1117 (2016), and dismissed the case. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
The relevant facts are not disputed. As noted, defendant's friend, Ferguson, accused plaintiff of sexual misconduct. The accusations led to two criminal charges against plaintiff in Washington; a jury acquitted plaintiff of both charges. Before and shortly after plaintiff's trial, defendant posted two online statements about the charges on Ferguson's Facebook page. Additionally, during the trial, defendant posted a comment on the website for the newspaper The Columbian. Those statements form the basis of plaintiff's claims against defendant.
Defendant made the first statement in response to a Facebook post by Ferguson. Ferguson's post stated:
"Tomorrow is a big day for me, [it's] a big day for a few folks, actually. I am eager to witness the judicial system working at full capacity! At the end of this trial, there will be 12 people that will decide the outcome of a very disturbing experience that I had almost a year and a half ago. IS he guilty or isn't he? NO matter what, he IS GUILTY. I am confident that my strength and conviction will play a big part in the outcome and I trust how that will be presented to all parties. A woman can be friendly, she can smile a lot, she can be funny, open and direct. Judge how you wish, but *404 please know that these qualities, in NO way give anyone permission to force themselves onto her!"
(Uppercase in original.) Defendant, among others, commented on that Facebook post. Defendant's comment stated:
"[W]e are 100% standing with you and by you. [W]e know who you are. [S]o we know this man is 100% guilty, and needs to pay the price for his lack of character and his criminal behavior.... [I'm] so sorry you had to experience something like this in your life, and [I] am praying for you and this case...... You are one of the best people I know .... [heart emoticon you]."
Defendant made the second statement during plaintiff's criminal trial, with a post on the website for The Columbian . The paper had published an article about the case that described Ferguson's allegations and plaintiff's position as "a case of 'he-said, she-said' and that it was a consensual encounter," and that Ferguson's version of events was not true. Defendant's comment stated:
"I know this person on a person[al] level, and she is telling the truth.....she is a fine [upstanding] person, a great mother, and a person of respectability and honesty.....she would never ever make this up....it happened, you can believe it......I hope this creep gets what he deserves.....what he did was traumatizing and just plain wrong.....He is a liar.....and a sexual predator....BEWARE.....!!!"
(Uppercase in original.)
Defendant made the third statement on Ferguson's Facebook page after the jury acquitted plaintiff. Responding to the acquittal, Ferguson posted "OJ got off too...but we all know he did it." Defendant commented on the post:
"Yes, and we all know this guy did it too. Justice at its worst...so sorry they couldn't get it right....[it's] a tragedy, for the community...hugs girl....we all stand with you, for you, and against him."
Soon thereafter, plaintiff filed this action. Defendant filed a special motion to strike under ORS 31.150. Defendant asserted that her comments "are written statements made in a public forum or public place in connection with an issue *405 of public interest, ORS 31.150(2)(d)," and "[plaintiff] cannot meet his burden of establishing that there is a probability that he will prevail on the claims, ORS 31.150(3)," entitling her to dismissal of the case. In particular, defendant contended that under Neumann , 358 Or. 706, 369 P.3d 1117, her statements qualified as opinions that *543 were protected by the First Amendment and were, therefore, not actionable.
Plaintiff opposed the motion. He did not dispute that defendant's statements were the type that permitted her to invoke the anti-SLAPP procedures, but, instead, contested defendant's assertion that her statements qualified as nonactionable opinions under Neumann , arguing that each statement was "presented as an unqualified statement of fact and is thus not subject to First Amendment protection."
Following a hearing, the trial court granted the motion. Applying the Neumann framework, the trial court ruled:
"Given the totality of relevant circumstances, the nature of the statements, their form and, importantly, their context as commentary to other articles and comments not written by [defendant], I find that a reasonable factfinder could not conclude that the statements made by [defendant] implied an assertion of objective facts. Read as a whole, the statements clearly reflect [defendant's] personal and subjective impressions and opinions based on her support for Ms. Ferguson."
Plaintiff appealed.
On appeal, plaintiff raises 11 assignments of error that present, essentially, one question: Did the trial court err when it concluded that, under Neumann , none of the identified statements are actionable? Plaintiff contends that at least some of the sentences in defendant's three online statements imply assertions of objective facts, so as to render the First Amendment protection for opinions inapplicable. Defendant responds that the trial court correctly understood Neumann to require it to view each statement as a whole within its surrounding context and that, so viewed, the court rightly determined that none of defendant's words were actionable.
*406 II. STANDARD OF REVIEW
We review for legal error a trial court's ruling on a special motion to strike under ORS 31.150. Neumann v. Liles , 261 Or. App. 567, 572-73, 323 P.3d 521 (2014), rev'd on other grounds , 358 Or. 706, 369 P.3d 1117 (2016).
III. ANALYSIS
A. The Neumann Framework
As framed by the parties' arguments both below and on appeal, the sole issue before us is whether any of defendant's online statements-or any parts of those statements-are actionable under the framework established in Neumann. Under that framework, where a statement addresses a matter of public concern, the "dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." Neumann , 358 Or. at 718-19, 369 P.3d 1117. To answer that question, we must examine the statements at issue under a three-part test:
"(1) [W]hether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false. Under that framework, we do not consider the defendant's words in isolation. Rather, we must consider 'the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside the protection of the First Amendment.' "
Id. at 719, 369 P.3d 1117 (internal citation omitted).
Neumann illustrates the analysis required under that framework. At issue in Neumann was whether the defendant's online review of a wedding venue, posted on Google Reviews, was entitled to First Amendment protection. The review was as follows:
" 'Disaster!!!!! Find a different wedding venue.
" 'There are many other great places to get married, this is not that place! The worst wedding experience of my life!
*407 The location is beautiful the problem is the owners.
*544 Carol (female owner) is two faced, crooked, and was rude to multiple guest[s]. I was only happy with one thing. It was a beautiful wedding, when it wasn't raining and Carol and Tim stayed away. The owners did not make the rules clear to the people helping with set up even when they saw something they didn't like they waited until the day of the wedding to bring it up. They also changed the rules as they saw fit. We were told we had to leave at 9pm, but at 8:15 they started telling the guests that they had to leave immediately. The "bridal suite" was a tool shed that was painted pretty, but a shed all the same. In my opinion [s]he will find a why [sic ] to keep your $500 deposit, and will try to make you pay even more.' "
Id . at 719, 369 P.3d 1117.
Examining the review under the three-part test, the Supreme Court concluded that it was protected under the First Amendment. Assessing the general tenor of the review, the court acknowledged that several individual statements contained within it could, "[s]tanding alone, create the impression that [the speaker] was" making objective assertions of fact about the venue owner's conduct. Id . at 722, 369 P.3d 1117. Nevertheless, the review had to be considered as a whole and, when considered as a whole, "the general tenor of the review thus reflects [the speaker's] negative personal and subjective impressions and reactions as a guest at the venue and negates the impression that [the speaker] was asserting objective facts." Id . at 721, 369 P.3d 1117. Looking at the wording of the review, the court noted that the speaker's use of hyperbolic vocabulary tended to "further negate any impression that [the speaker] was asserting objective facts." Id . Finally, the court concluded that the review was not capable of being proved true or false. When considered as a whole, it "generally reflect[ed] a strong personal viewpoint as a guest at the wedding venue." Id. In reaching that conclusion, the court again acknowledged that certain sentences contained within the review, when viewed in isolation, could be read to assert statements that were susceptible to being proved true or false. Id. at 721-22, 369 P.3d 1117. But, the court emphasized, the proper analysis requires an examination of individual statements within the context of the review as a whole, a context which demonstrated in that instance that the statements *408 were "not provably false" but, rather, statements of opinion or speculation. Id .
In this case, plaintiff conceded below that defendant's statements involved a matter of public concern for purposes of the Neumann analysis. In view of that concession, our only task is to determine whether, under Neumann 's three-part test, the challenged statements constitute protected, nonactionable opinions. We address each of the statements in turn. For the reasons explained, we ultimately conclude that each of the challenged statements, when viewed through the Neumann lens, constitutes defendant's nonactionable opinion regarding Ferguson's character and credibility.
B. Defendant's First Statement
As noted, the first statement at issue took the form of a comment on a Facebook post by Ferguson. The post stated:
"Tomorrow is a big day for me, [it's] a big day for a few folks, actually. I am eager to witness the judicial system working at full capacity! At the end of this trial, there will be 12 people that will decide the outcome of a very disturbing experience that I had almost a year and a half ago. IS he guilty or isn't he? NO matter what, he IS GUILTY. I am confident that my strength and conviction will pay a big part in the outcome and I trust how that will be presented to all parties. A woman can be friendly, she can smile a lot, she can be funny, open and direct. Judge how you wish, but please know that these qualities, in NO way give anyone permission to force themselves onto her!"
(Uppercase in original.) Defendant, among others, commented on the Facebook post, stating:
"[W]e are 100% standing with you and by you. [W]e know who you are. [S]o we know this man is 100% guilty, and needs to pay the price for his lack of character and his criminal behavior.... [I'm] so sorry you had to experience something like this in *545 your life, and [I] am praying for you and this case...... You are one of the best people I know .... [heart emoticon you]."
The first inquiry is whether the general tenor of the entire publication negates the impression that defendant *409 was asserting an objective fact about plaintiff. Neumann , 358 Or. at 719, 369 P.3d 1117. It does. From the outset, it is apparent that defendant is describing her personal opinion and feelings based on her relationship with Ferguson: "[W]e know who you are. [S]o we know this man is 100% guilty. *** You are one of the best people I know." That is, defendant's statements communicate that her relationship with Ferguson is why she "knows" that plaintiff is guilty. That negates the impression that she is making an assertion of objective fact and instead, in context, implies that defendant is expressing her support for her friend based on their friendship.
Plaintiff argues that, because defendant "states that she knows 'this man is 100% guilty,' readers could conclude she had additional facts indicative of Plaintiff's guilt," and that, under Oregon law, to determine whether a statement is actionable, "Oregon courts have routinely stated that part of the analysis includes whether a purported statement 'implies the existence of undisclosed facts.' Hickey v. Settlemier , 141 Or. App. 103, 110 [, 917 P.2d 44] (1996)." We disagree that defendant's comment, when viewed in context as Neumann directs, reasonably can be read to imply the existence of undisclosed facts. Although, divorced from its context, the statement might convey the impression that plaintiff identifies, we understand Neumann to mandate consideration of the words extracted by plaintiff within the context of defendant's entire statement. Looking at the entire statement, defendant's comment explicitly ties her expression of belief that plaintiff is 100 percent guilty to the fact that she is familiar with Ferguson's character: "[W]e know who you are." Additionally, the statement was posted directly on Ferguson's Facebook page in response to Ferguson's own posting about the incident. When the statement is considered as whole within that context, its general tenor tends to negate the impression that the statement is one of objective fact or anything other than an unqualified statement of support for a trusted friend.
Relying on Bryant v. Recall for Lowell's Future Committee , 286 Or. App. 691, 692, 400 P.3d 980 (2017), plaintiff argues, alternatively, that "determining whether sufficient evidence exists to defeat a defendant's special motion to strike requires the court to rule on each potentially *410 defamatory statement 'individually.' " In particular, plaintiff asserts that Bryant requires consideration of whether certain individual sentences contained in defendant's three online posts are, standing alone, capable of being understood as assertions of objective fact without regard to the context as a whole. According to plaintiff, when certain sentences in defendant's posts are viewed in isolation, such sentences could permit a reasonable factfinder to find that defendant was making defamatory assertions of objective fact, rather than protected statements of opinion.
We do not read Bryant to stand for that proposition with respect to statements such as those at issue in this case. In Bryant , the defendants' anti-SLAPP motion required us to consider seven statements that the defendants made in an election flyer about an opponent. 286 Or. App. at 693, 400 P.3d 980. The statements were individual, separated sentences, contained in a single document.[1]
*546 Id. Each of the sentences at issue made distinct allegations about the candidate. In that context, we stated:
"Thus, to establish a prima facie case to defeat defendants' special motion to strike, plaintiff had to produce sufficient evidence to show that defendants' statements imply an assertion of objective fact and cannot reasonably be interpreted in a manner that makes them 'factually correct.' Addressing that question requires that we address each of the seven statements individually."
*411 Id. at 700, 400 P.3d 980. Plaintiff focuses in on the word "individually" and argues:
"In Bryant , the court confronted the question whether individual statements in a single publication were defamatory and considered each statement individually in making its determination. See Bryant , 286 Or. App. 691, 400 P.3d 980. Here, the potentially defamatory statements exist in not one, but three separate publications: a comment on the website of The Columbian , and two distinct Facebook comments, highlighting the need for individual consideration. The trial court did not afford Plaintiff the benefit of Oregon law in ruling on Defendant's motion because it failed to rule on each publication individually."
As plaintiff points out, the statements in Bryant were contained in a single document. What plaintiff does not point out is that each challenged statement in the flyer in Bryant was written as a single, stand-alone statement, visually separated from the other statements. Id. at 694, 400 P.3d 980. Each statement also appeared to address different content from the other statements. Id . They were not, as was the case in Neumann and is the case here, parts of a single, larger paragraph or statement that were visually and conceptually connected. It is under those circumstances that we concluded that each of the challenged statements required individual analysis without regard to the other stand-alone statements contained in the flyer. However, nothing in our analysis suggests that individual sentences contained in a paragraph or larger statement must be analyzed independently from the other sentences contained in the paragraph or larger statement. Indeed, Neumann explicitly instructs to the contrary that sentences contained in a larger statement must be evaluated in view of the whole. Neumann , 358 Or. at 719, 369 P.3d 1117. Thus, to the extent that plaintiff contends that we must assess the general tenor of certain sentences in each of the challenged online posts without regard to their surrounding context, we reject that assertion as contrary to Neumann .
The next step is to consider whether the use of "figurative or hyperbolic language *** negates the impression that [defendant] was asserting objective facts." Id . at 721, 369 P.3d 1117. Here, defendant's hyperbolic word choices do tend to negate the impression that she is asserting objective facts.
*412 Defendant's statements that "we know this man is 100% guilty," "[plaintiff] needs to pay the price," and "[y]ou are one of the best people I know," are all hyperbolic statements of defendant's personal opinion. See generally Chief Aircraft, Inc. v. Grill , 288 Or. App. 729, 734, 407 P.3d 909 (2017) (use of the word "completely" makes a statement appear hyperbolic); Greenbelt Co-op. Pub. Ass'n v. Bresler , 398 U.S. 6, 13-14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970) (use of the term "blackmail" in characterizing the negotiating position of a public figure who spoke at a heated public meeting was not defamatory as a matter of law, but was rhetorical hyperbole).
The final step under Neumann is to consider whether defendant's statement is susceptible of being proved true or false. Plaintiff argues that, in this case, defendant's statements can be proved true or false because we have the jury's verdict, unanimously acquitting him of the allegations. Plaintiff contends that "[a] person's innocence or guilt is a fact-based question. Defendant's statement is demonstrably false, and the court should not afford it First Amendment protection."
Although plaintiff may be correct that the question of his guilt or innocence is something that is susceptible of being proved true *547 or false, the question here is whether the assertions communicated by defendant's statements are ones that are susceptible to being proved true or false. Again, when viewed as a whole in context as Neumann requires, defendant's statements express her personal opinion, based on her relationship with Ferguson and her inclination to credit Ferguson's version of events, that plaintiff is guilty. Defendant's statements about her own personal opinion are not ones that are capable of being proved true or false for purposes of the Neumann analysis. As we understand that analysis, the expression of a personal viewpoint is not something that is susceptible to being proved true or false. For those reasons, the trial court correctly concluded that defendant's first Facebook post was not actionable.
C. Defendant's Second Statement
The next statement at issue is defendant's comment on The Columbian website under the article discussing plaintiff's criminal trial. The comment stated:
*413 "I know this person on a person[al] level, and she is telling the truth.....she is a fine [upstanding] person, a great mother, and a person of respectability and honesty.....she would never ever make this up....it happened, you can believe it......I hope this creep gets what he deserves.....what he did was traumatizing and just plain wrong.....He is a liar.....and a sexual predator....BEWARE.....!!!"
(Uppercase in original.) Again, as with the previous comment, the general tenor of the statement is one of opinion about Ferguson's credibility based on defendant's personal relationship with Ferguson. Defendant's statement that "I know this person on a person[al] level, and she is telling the truth," indicates that it is because she has a personal relationship with Ferguson that she knows that she is telling the truth. Defendant does not suggest at any point that she has firsthand knowledge about the incident involving plaintiff and Ferguson but, instead, emphasizes what she knows about Ferguson's character traits, describing her as "[upstanding] * * * a great mother * * * and a person of respectability and honesty"-all of which precede defendant's statement that "it happened, you can believe it." The general tenor of those comments is one of opinion-defendant's opinion that Ferguson is a credible person. The fact that The Columbian article on which defendant commented indicated that the trial boiled down to a credibility contest between Ferguson and plaintiff contributes further to the impression that defendant's statements were expressing her personal opinion about Ferguson's character, rather than any objective knowledge about the events that led to the trial.
As for the second inquiry, defendant's statement employs hyperbolic rhetoric and punctuation: "[Ferguson] would never ever make this up" and "....BEWARE....!!!" She calls defendant a "creep." In the context of that other hyperbole and name-calling, defendant's references to plaintiff as "a liar" and "sexual predator" also give the impression of hyperbole, when taken in context.
Finally, like the first statement, the statement communicates defendant's strong personal belief about Ferguson's character and credibility, and the opinion that she has formed of plaintiff as a result of her opinion of *414 Ferguson. That statement of opinion and belief is not one that is susceptible of being proved true or false. Neumann , 358 Or. at 719, 369 P.3d 1117. Thus, the trial court correctly concluded that defendant's second statement is not actionable under Neumann .
D. Defendant's Third Statement
The final statement at issue in this case was another post on Ferguson's Facebook page. After the jury acquitted plaintiff, Ferguson posted: "OJ got off too...but we all know he did it." Defendant responded to that post, commenting:
"Yes, and we all know this guy did it too. Justice at its worst...so sorry they couldn't get it right....[it's] a tragedy, for the community...hugs girl....we all stand with you, for you, and against him."
Like the first two statements, this statement, when viewed as whole in context, is yet another statement expressing defendant's belief in her friend. The general tenor of the *548 statement is one of sympathy and support for a friend, and does not, in context, give the impression that defendant is making objective assertions of fact. The statement again employs hyperbole, stating what "we all know," describing the trial as "[j]ustice at its worst" and "a tragedy, for the community," further negating any impression that defendant was asserting objective facts. Finally, when viewed as a whole in context, defendant's statements communicate her personally held beliefs about defendant, based on her friendship with Ferguson, and, for that reason, are not susceptible of being proved true or false.
IV. CONCLUSION
In sum, when each of the three challenged statements is considered as a whole, within its respective context, each, like the review in Neumann , gives the impression of a strongly held opinion or viewpoint and, as such, would not allow a reasonable factfinder to find that any of the statements communicated an assertion of objective fact. Thus, under Neumann , as we understand it, the trial court correctly concluded that each of the challenged statements *415 is protected by the First Amendment and, therefore, is not actionable. The court was correct to grant defendant's special motion to strike under ORS 31.150 and to dismiss the case.
Affirmed.

Those statements are as follows:
"1. '[Plaintiff] inferred [sic ] City Administrator Chuck Spies was involved in missing city money. Her false inference [sic ] nearly cost the city $20,000 for an investigation and a law suite [sic ] against the City.'
"2. '[Plaintiff] cost the City money by calling the City Attorney without the authorization to do so.'
"3. '[Plaintiff] was then fined by the State of Oregon for not following the rules for her publication "The Voice." '
"4. '[Plaintiff] has recklessly charged city staff with unsupported allegations, and thus placed the city at risk of ruining people's careers and reputations with no foundation, all of which necessitated $1,927.00 of unbudgeted expenditures for legal fees.'
"5. '[Plaintiff] incorrectly asserts that she formed "Save-Our-Schools Lowell" to raise money for our schools.'
"6. 'Save-Our-Schools Lowell does not exist.'
"7. '[Plaintiff] made a personal recording of a city council executive session meeting in violation of state law.' "
Bryant , 286 Or. App. at 694, 400 P.3d 980.